OPINION OF THE COURT
Charles F. Cacciabaudo, J.
After a nonjury trial the defendant, Giuseppe Zanghi, was found guilty of criminally negligent homicide, and making a punishable false written statement.
By this application, the defendant now moves, prior to sentencing, for an order pursuant to CPL 330.30 (1) to set aside the guilty verdict on the grounds, essentially, that there are trial errors in the record of sufficient magnitude as would require an appellate court to reverse or modify the judgment as a matter of law.
The District Attorney has answered defendant’s application and strenuously opposes the defendant’s motion in all respects.
CPL 330.30 (1) authorizes a trial court to set aside a verdict if a ground appears in the record which, if raised upon an appeal from a prospective judgment of conviction, would require a reversal or modification of the judgment as a matter of law by an appellate court (People v Ventura, 66 NY2d 693; People v Carter, 63 NY2d 530).
Initially, defense counsel states that the trial court erred when it denied defendant’s motion for a trial order of dismissal. Essentially, it is the defendant’s contention that the prosecution failed to prove a prima facie case necessary to support a conviction of either manslaughter in the second degree or criminally negligent homicide, the lesser included offense.
In his argument in this regard the defendant erroneously asserts that the People were required to establish, as a necessary element for conviction, the culpable mental state of intent.
For both manslaughter, second degree, as charged in the indictment, and criminally negligent homicide of which the defendant was ultimately found guilty, it is not required that the People prove that the defendant acted intentionally with respect to conduct or a result. The culpable mental state that the People were required to prove was that the defendant acted either recklessly or with criminal negligence as those terms are defined in Penal Law § 15.05. The element of acting *680 intentionally with respect to conduct or a result is not required to sustain a conviction for either crime.
The essential distinction between manslaughter, second degree, and criminally negligent homicide is the state of mind of the actor, his culpable mental state. In the former, the actor is aware of the substantial and unjustifiable risk of death but consciously chooses to disregard it in a gross deviation from a reasonable standard of care. In this instance, the culpable mental state involves acting recklessly. (Penal Law § 15.05 [3].) The latter offense requires the actor to fail to perceive the risk of death inherent in his act and for this failure to constitute a gross deviation from a reasonable standard of care. In this instance, he acts with criminal negligence (Penal Law § 15.05 [4]; People v Murphy, 88 AD2d 1000).
Again, neither crime requires the element of acting intentionally.
For this court to have granted the defendant’s motion for a trial order of dismissal, at either the conclusion of the People’s case or at the conclusion of all the evidence, it would have had to have found that the trial evidence was not legally sufficient to establish the offense charged or any lesser included offense (CPL 290.10 [1]; People v Lynch, 116 AD2d 56; People v Congilaro, 60 AD2d 442). This was a conclusion that this court, obviously, was unable to reach.
After again reviewing all the trial evidence the court finds no error in its decision to deny defendant’s motion for a trial order of dismissal. This court felt then, at time of trial, and still feels now that the evidence presented at trial was legally sufficient to support this court’s verdict of guilty. There is nothing contained within defendant’s motion to set aside the verdict that would sway this court to rule otherwise.
As I see it, the trial evidence supported a finding of guilt as to the lesser included offense of criminally negligent homicide. At the close of all the evidence it became apparent that the defendant, Giuseppe Zanghi,. suffered an epileptic seizure which led to the accident resulting in Dr. Bang’s death. The evidence further established that the defendant was aware of his condition for over 30 years and during this time period suffered numerous seizures. Further, upon his admission to the hospital after the accident an examination of the defendant’s blood indicated that there was a grossly insufficient amount of medication in his system to control his epileptic condition. The evidence further established that at or about *681 the time of the accident in question, the defendant knowingly took much less than the prescribed amount of medication as is required to control his condition and frequently took no medication at all.
The trial evidence established that the defendant is an individual who has suffered from epilepsy for many years, who lied about this condition on his application for a driver’s license, who drove for many years in New York with this condition without notifying the licensing authorities as is required by law, who on his own reduced the amount of medication he took to control seizures and who often times took no medication at all. Having this set of facts in mind, one day he gets behind the wheel of a car and while driving on the Long Island Expressway suffers a seizure, crosses the center median, drives a distance and collides head on with another vehicle resulting in the death of Dr. Bang.
Clearly, the court is aware that the defendant had no intention of causing this result. But merely not having this intent does not absolve the defendant from criminal liability under these circumstances.
What the evidence did establish, to the satisfaction of this court beyond a reasonable doubt, was that the defendant caused the death of another and that he failed to perceive the substantial and unjustifiable risk that death would result from his actions (as have been described above). This risk of death was of such a nature and degree, under these circumstances, that the failure to perceive it constituted a gross deviation from the standard of care that a reasonable person would observe in the situation.
It is this court’s opinion that the trial record supports this finding and that the evidence was legally sufficient to support the verdict of guilty as to both charges.
Therefore, since the court feels no error was made by it in its denial of the motion for a trial order of dismissal the application, in this regard, to set aside the verdict is denied.
The defendant further alleges that the trial court erred when it permitted the prosecution to proceed on alternate theories of recklessness.
The court disagrees with the defendant on this issue. It is my position that I did not allow the District Attorney to proceed on two separate theories of prosecution.
The defendant was charged in count one of the indictment with manslaughter in the second degree in that he recklessly *682 caused the death of Dr. Bang by his operation of a motor vehicle.
The court’s ruling in this regard was to permit the prosecution to present evidence showing that there was more than one way in which the defendant’s conduct could be considered reckless. It never permitted the District Attorney to proceed on alternate theories, as alleged, or change its basic theory of prosecution. The defendant was charged with acting recklessly and solely on this theory did the People proceed during trial.
It is the position of the court that no error was committed when it permitted the prosecution to show an alternate approach to its theory of recklessness.
Any surprise to the defendant could have been avoided had defense counsel availed himself of his statutory pretrial right to make an application for a bill of particulars. (CPL 200.05 [1].)
The defendant also argues at length about a purported defect in the indictment itself. However, any argument on this issue, at this time, is without merit. The defendant’s failure to timely allege nonjurisdictional defects constituted a waiver (People v Branch, 73 AD2d 230; People v Grimsley, 60 AD2d 980; see also, CPL 210.20, 255.20).
Further, contrary to defense counsel’s contention, evidence of the defendant’s epileptic condition was presented to the Grand Jury. What is unclear is exactly how this evidence was used by the Grand Jury and what weight it was given. This court is not prepared to say that the Grand Jury could only have applied this evidence to the charges pertaining to count one of the indictment. It is highly possible that they may well have used it as a basis to indict the defendant on the manslaughter charge in count two.
The primary function of an indictment is to inform the defendant of the charges against him. It also serves to ensure that the crime for which he is brought to trial is in fact the one for which he was charged by the Grand Jury (People v Iannone, 45 NY2d 589; People v Branch, supra). In this case it is this court’s opinion that these traditional functions have been satisfied. The defendant was charged by the Grand Jury with manslaughter in the second degree based on the theory that he recklessly caused the death of another. At trial, the People proceeded solely on this theory of recklessness.
Further, this court agrees with the holding in People v Rubin (101 AD2d 71, 77) that "[t]he right of an accused to be *683 tried and convicted of only those crimes and upon only those theories charged in the indictment is fundamental and nonwaivable”.
However, it is my feeling that the facts presented in Rubin (supra) can be distinguished from those in our situation in that in the case at bar the indictment does not clearly describe the exact reckless manner or theory in which the defendant operated his motor vehicle. This ambiguity could have been resolved at the pretrial stage by a timely defense motion for a bill of particulars or motion to dismiss the indictment as being defective. Neither application was made at that time and neither remedy is available now. The court resolved the matter by permitting the District Attorney to pursue an alternate approach to establish the defendant’s reckless conduct. It is the court’s position, as stated above, that this decision did not permit the District Attorney to alter its basic theory of prosecution. The People proceeded on the theory that the defendant’s conduct was reckless, and this remained their theory throughout the trial.
In addition to reexamining the facts as they relate to this issue I have also thoroughly searched my conscience and upon doing so I am satisfied that the ruling I made was correct.
Accordingly, based on the foregoing, the court finds that there are no grounds appearing in the record which, if raised upon an appeal from a prospective judgment of conviction, would require a reversal or modification of the judgment as a matter of law by an appellate court.
Therefore, defendant’s application to set aside the verdict pursuant to CPL 330.30 (1) is denied.